Good morning, Your Honors. Michael Morges for Appellant. May it please the Court. At bottom, the problem my client has is this. He's on the San Diego County District Attorney's Brady List. And he has no real prospect or no meaningful opportunity to be removed from that list. There is no procedure by which he can be removed. He's been told the quote-unquote policy that the District Attorney has is that you can submit materials. He's submitted all the materials he has. But the problem is that there is no articulable standard that will allow him to be removed from this index. What about the fact that he has to show that he was completely prohibited from obtaining employment? Isn't that the standard? I don't believe that's what the cases say. I know that the District Court relied on that standard, and the county argued that. Okay, what case would you point us to that's contrary, that is, in fact, if it's not – first of all, if it's controlling, that would be important. But if it's not controlling, that it's at least – it is a case that we can rely on. Sure. None of the cases – first of all, none of the cases say that it must be a complete prohibition. The cases looked at whether something was a complete prohibition, and if it was, found that the liberty of interest was invoked. And the other cases, which I will name in a moment, talked about the impact being far too removed from a complete prohibition. It would seem to me that if the test was a complete prohibition, it would be – is it a complete prohibition, or is it not a complete prohibition? Not is it far too removed. So the first one is Kahn v. Gabbard, which both parties cited. There, the Court talks about unreasonable government interference with the liberty of interest. In Lowry v. Bernhardt, a Ninth Circuit case, the Court did talk about whether the impact fell far short of a complete prohibition. It has to be more than an indirect and incidental burden on the professional practice. So to me, again, that indicates that there is room short of a complete prohibition. Otherwise, this language that it be more than an indirect and incidental burden would be meaningless. Okay. What evidence that was presented, admissible evidence, that was presented by your client to establish that he was prohibited, whether completely or not, that he was prohibited – and, of course, it's a matter of causation – prohibited by the State? So, in other words – I think I understand the question. There has to be – the Court can only consider admissible evidence on a motion for summary judgment. So what did he offer to overcome the motion for summary judgment that was admissible, non-hearsay evidence that he was prohibited from his occupation because of the Brady index? The evidence he presented, and this may or may not meet your causation prong, were – Well, it's got to meet yours. – were jobs that he was turned down for because he was on the Brady list in the County of San Diego. What more can he present other than that? That he looked elsewhere. That he looked at another county, do you mean? Right. But how far – it seems to me that I think we're making more out of it when you say, he must look all over the country at every job. Didn't say that. Didn't say that. Or every county. You're saying that the showing is for applications, right? Yes. I have another question, if I might. Sure. Opposing counsel argues that until this appeal, that Mr. Tillotson hadn't made a showing under Brady that his prior misconduct was not potentially discoverable information. What – Did you make the argument to the committee of lawyers, prosecutors who make this decision? Or did you – What he was invited to do was to provide evidence of what it was he was accused of. And he admitted to the misconduct. Right, but I'm not talking about – But did he make legal argument for why he should be not on the Brady list? Right. That's essentially what's going on. They're making a legal determination. They're looking at the standard under Brady and whether they would have to disclose this prior misconduct. Did your client make an argument that the prosecutors got it wrong? No. What he did was he submitted the materials that he was asked to submit and portrayed himself in the best light. Sure. So as to try to persuade the committee to not put him on the Brady list. Right. But you see my problem, of course. Well, you're asking whether he said, hey, this is wrong because of X. Right. Did he try to make that argument because they invited him? Well, all they invited was you can submit additional materials in this informal policy. Right. He had no additional materials to submit. Okay. So my question, and I don't mean to belabor the point, but it sounds like you're agreeing that he didn't make argument about why their legal analysis was incorrect. He did not submit any type of brief or legal memorandum stating this is incorrect under Brady v. Merlin. Now, in 1998, your client was a police officer in San Diego County Sheriff's Department. And then he was asked if he'd qualified for a range. Yeah. And he said he had. And that was incorrect. That was not true. That's correct. That's not true. And did he come back the next day? Very shortly after he came back and he said, I was dishonest. When was the next day he came back? I believe it was the next day. I think that the following morning he tried to qualify or find time to qualify, could not. And this is what he put in his letter to the district attorney. He tried to qualify. For his monthly firearms qualification. What do you mean he could not? He didn't have an opportunity to actually go to the range and qualify. Not that he failed. He just did not have an opportunity. He was fired. Yes. And was he fired right on the spot? No. There was a subsequent internal affairs investigation and it was several months later that he was terminated. Okay. And did you represent him at that time? No, I did not represent him until this appeal. Okay. And then he was hired by the Saican Tribal Police Department. And he disclosed at that time his earlier termination. Yes. Okay. And then 10 years later, 2008, he applied to work as a volunteer reserve police officer for the Coronado Police Department. And he again disclosed his earlier termination. Yes, he did. And then a Coronado police officer contacted the San Diego County District Attorney's Office to see if the 1998 termination meant that Tollison was on the San Diego County Brady Index. Right. And he was initially told, no, that would not be something that would put him on the Brady Index. Okay. So he was told no. By a DDA, yes. He was told no. I believe his name is Mike Still. Mike Still. All right. Then San Diego County, the Brady Index Committee, then they got on his case and reviewed the 1998 termination and put him on the index. Correct. It took them 10 years to get him on the index. That's right. And then the Tribal Police Department fired him. That's right. For being on the list, not for the underlying misconduct. For being on the list. If I may, Your Honor. And then after he found out he was placed on, how did he find out he was on the list? They told him, huh? He was notified by letter, which is in the record. Then he submitted four applications for employment as a police officer, and all of them were denied. They were all in San Diego County, but there was one in Riverside County. Correct. But I believe he was not entirely sure why he was rejected from one of them. Well, he was rejected. Yes. He was rejected. And then apparently the DA, Williams, explained that he could be removed, or Tolletson could be removed from the index, if trial courts consistently concluded that his act of dishonesty was not Brady material, and if such a decision was upheld on appeal. And then we also learned or testified that the index contained six to ten individuals who were still employed as police officers. Who have not been terminated for being placed on the list. Who have not been terminated. Your Honor, this issue with the Brady index, and this goes back to Judge Kristen's question, of how far did he go to find out whether he could find a job, and how prohibitive was this really. I submitted a 28-J letter last week, pointing out that the California legislature has enacted Government Code Section 3505, 3305.5 of the California Public Safety Officers Procedural Bill of Rights Act. Now that doesn't go to hiring decisions, but it goes to termination decisions. And although that does not go into effect until next month, the import of that law is you cannot terminate somebody for simply being on the Brady list. Because this is a problem in California. I represent somebody that was terminated simply for being on the list. But why did they have an obligation to rehire him? Why does who have an obligation to rehire him? Any police department. It's a different analysis, right? Yes, and I think that goes to Judge Silver's prohibition question. Is the fact that he's on the Brady list, is that the cause, or is it the unwillingness of departments to hire the person? And I understand that it's a different question. But I think the specific problem here, as recognized by the California legislature, is the connection between one arm of law enforcement, the district attorney's office, and another arm, the guys that go out and get the bad guys. Sometimes they get the bad guys. Well, they try. Sometimes they're the bad guys. But the DA's office is between a rock and a hard place because they are required, and we would certainly require, that they comply with Brady. They are required to comply with Brady, certainly. Right, so when they make a hiring decision, I'm sure their argument in their briefing, and I'm sure it will be today, that when they make a hiring decision, they're looking to make sure that they don't do anything that would compromise their prosecutions. Yes, that's correct. Which is why it seems to me that it's so important to know whether your client did all he could do to really argue about their legal conclusion, their legal analysis about whether this is discoverable or not. Because if it's not material under Brady, that would be a completely different ballgame. And I don't have a record to show that he's done that. And I couldn't point to anywhere in the record where he actually has done that. I appreciate your candor. Thank you. Is there anything in the record that would establish it? It seems to me what you're saying is that each and every one of the employers or potential employers that didn't hire him didn't hire him because he was on the list. They didn't know why he was on the list. They didn't know, in fact, that it was not a Brady violation or could not be a Brady violation, might not be a Brady violation. No, the only evidence would be his declaration in support of his motion for summary judgment and in support of his opposition to the county's motion for summary judgment. Which? Which says that I was told that in some instances I was not hired because I was on the Brady list and not necessarily for the underlying conduct. And, in other words, that would be his statement, which would be basically hearsay. I don't believe there was any objection to it. Okay. But here we are on appeal and determining whether or not there's a genuine issue of material fact and we have to look to determine whether or not there's admissible evidence. And he says that it was merely because I was on the Brady list. So let's assume that for a moment. Is there anything in the record on top of that that would establish that the Brady writ or that it should go to the jury merely on the basis that the Brady list is not reliable? In other words, that it doesn't do what it purports to do, which is to set forth the constitutional obligation under Giglio to provide all evidence that is particularly with a law enforcement officer that would establish their lack of credibility. First. Anything to show that it's unreliable, that Brady list? Well, that is why the underlying complaint gets not so much at whether each and every decision to place somebody on the Brady list is correct or incorrect, but whether there are safeguards and procedures more than just, hey, submit something and maybe we can get you off the list. Well, okay. And I appreciate that. To ensure that accuracy. Yeah, I appreciate where you're going with that. That's in the issue of how much is required to ensure a procedural due process. But you have to look at what is the potential harm. Now, more procedural due process where you have, let's say, a list that is unreliable. And if you had evidence to show, say, for example, that this particular list is a list of misfeasance, malfeasance, essentially a lie in this situation, by a police officer who may testify, and this information is going to be then brought out by a defense counsel to challenge credibility, then that it is this report that's put together is occasionally mistaken. So to take it from your point, which is let's just take the record as it is, that he said he was only told he's on the list, not that the information behind it, which was the reason that he was fired, was in fact the reason he was not going to be hired. Okay, let's take that as true. Is there anything in the record to show that the Brady Index is unreliable? As to him or as to anybody? So that you would, that would, that would then, in some circumstances, require a much higher standard of procedural due process. Yes. Well, there's not much. You know, you're asking for a substantial due process here. I understand. Okay. Actually, it may go a little bit more to procedural than substantial. You know what I'm saying, a substantial amount of procedural due process. Okay. There is no particular evidence that they made a mistake in one case. But there's the testimony of D.D.A. Williams that even if this had happened 20 years ago, and you have to consider the circumstances and what it actually was and was this a long, does he have a record of being dishonest or was this an open and closed thing, which it pretty much was, that even if this had happened 20 years ago, he'd still be on the list. So when does he get off the list? I guess that's really the point. What can anybody do? Your Honor, you said that the D.A. is between a rock and a hard place, but so is this individual. Well, but he hasn't made the show, he hasn't made the legal argument counsel. You mean he didn't make it below? Right. Well, I don't know, is there an exhaustion prohibition here? I just think it's really tough for me to show, well, let me ask a foundational question. Are you only proceeding here on procedural due process or are you also making a substantive due process claim now? The substantive due process claim was dismissed and he is not pursuing it. Okay, so we're just talking about procedural due process. That's why it seems to me very difficult for your client, since he hasn't tried to make the legal argument below that their Brady determination was wrong. Well, here's why I disagree with that. I understand what you're saying, that he should have made the pitch to them first to give them an opportunity to deal with it. But that would be if there was a particular procedure to exhaust. We have an administrative procedure and you're required to exhaust your administrative procedure before you can go to court and make the same argument, and that doesn't exist. It doesn't exist, but you do have an open invitation, it seems to me. Well, then it was futile because he had no new evidence to present and no reason to exhaust it if he was required to. So just, I don't want to belabor the point, but it's not about presenting evidence, it's about explaining why you think their Brady determination was wrong. And it would be a different, the case would be in a different posture, it seems to me, if the prosecutor's committee had refused to consider that. Well, how about if the prosecutor, and I know you're the one that asked the questions, but if the prosecutor's had admitted it and he believed the decision was still wrong, how far, how long does it go on at the administrative level before he goes to court? It just strikes me that this isn't that case that we're going to find out. I suppose not. Let me, I'm curious about this. So he was asked if he qualified or was arranged, and he said yes, and he wasn't truthful. How could that be used as Brady material? Well, my friend will argue that it could be used to impeach him on the stand. On what basis? That 15 years ago he told a falsehood to a supervisor. However, the cases that we cited, particularly the California cases, one dealing with both Pitchess and Brady, talk about an instance where somebody failed to report twice or covered up for somebody else. And the defendant in that case wanted a disclosure of the officer's personnel file for that purpose to show that, to prove that he may have encouraged witnesses to fabricate evidence. And the court said these two things, this is not material, the prior misconduct to the current trial. So it's not that everything that potentially could be Brady is always material. All he did, what he did, was he told a lie. All he did, okay. That's what your client did. Did you do this? Yes. Well, he was lying. And then he went back and he said, you know what, I didn't do it. And he said the next day, whatever it was, you know. I blew it. I'm sorry, you know, whatever reason he gave. But how is anybody going to use that to impeach him? That's what I wonder. Well, the argument that we made in our briefs was that it would not be material, particularly given the event, the isolation of it, and the great passage of time, that it wouldn't be material to any current trial. Under what basis does it come in? I don't think it does. I believe that my friend will be happy to jump all over that question. But we argue that it's not material, and we don't think it is. Forget about it. All right. Let me ask you, there isn't here an organized method for, for prosecutors to ensure that they are complying with the Constitution, with Brady, when they call them, Brady Index. But let's assume they don't have an organized method and means of doing this. It's not structured. They don't have a Brady Index, but they receive phone calls, as would be commonplace from other law enforcement agencies. What about this guy? And so they keep, you know, they have some records now. Everybody's got computers. They don't call them Brady Index. They keep it, and they tell them that he got himself in trouble and he told a lie. And does that present a basis upon which your client can challenge the district attorney for providing that information, and then the prospective employer relying on it? There's no index, so what's? I'm not quite sure what the answer to that is. Or just, let's say the information wasn't, the content, let's just say you put it in the context of not an index, but just information from the district attorney. Okay. There's a problem here with him. Is that a basis upon which he can challenge the district attorney on either a substantive due process, which is no longer an issue, but procedural due process? To the extent that there seems to be no method, no organized method by which to determine whether he engaged in the act, whether it is Brady material, certainly to that extent I would think so, because this just seems whimsical. Every time, whether it is a police officer or not, it's anyone else who's working for the government, is fired for some reason, and they're called, they apply for another job, and the employer calls the previous employer, who happens to be the state or the government, and they say the person was let go or there was a problem with this person, then under every one of those circumstances there has to be due process, that the individual who doesn't get the job, who previously worked for the district attorney's office, has to be told. Challenge at that time? I don't think so, and I think that inquiry is obviated by the fact that when someone applies for a job at a police department, they usually have to sign a waiver as to what's discovered in their background and what they can do about it. That's the most I know about it. I don't have a specific answer, yes or no, for your question, but I think that it's generally waived as a matter almost of contract when you apply for a job. Okay, we've heard from you. Okay, any other questions? We're going to take a short break. We still have a couple minutes. Ten minutes and 49 seconds. I'm sorry, excuse me. All rise. We're going to stand in recess for ten minutes. Okay. Okay. Okay.  Okay. Okay. Okay.  Is there a place I can get some water? There's water here. Okay. Thank you. So we'll go straight through. Yes. Okay. Thank you. Thank you. Thank you. Okay. Okay.    Thank you.  Thank you. May it please the Court, Thomas Bunton, Senior Deputy County Counsel, on behalf of District Attorney Bonnie Dumanis and the County of San Diego. The District Court in this case properly granted summary judgment for the county with respect to the procedural due process claim that's under consideration, and that is the only claim before the Court. They can bring a substantive due process claim in the future, not precluded from that. Well, they very well may be collaterally stopped from doing that. They bought a substantive due process claim in this case, and the Court granted the county's motion to dismiss, the county and the District Attorney's motion to dismiss with respect to that claim, and that claim has not been appealed, and therefore it's been waived. So I don't believe ---- Forgive me. I didn't mean to interrupt you, Counsel. What prevents Mr. Tillotson from having his lawyer now make the presentation to the Prosecutor's Committee about why he thinks they're wrong about their Brady determination? I don't think anything prohibits it at this particular time. The Committee invited additional material should Mr. Tillotson wish to present it, and as you point out, he never did. What's material mean, though? His point is he doesn't have any more evidence. Could he request a hearing? Could he request an opportunity to be heard? Well, it seems to me that there are no factual disputes here. The lie is ---- But my question is yes or no. Is he permitted to do that? He would be permitted to submit a legal argument, which is what he's essentially submitted here. A piece of paper. He could submit a legal brief or something equivalent to a brief to explain why he believes that he should not be on the Brady Index, and that is essentially ---- He's never raised any factual issues. In fact, he, along with the Coronado Police Department, came to the county and said, here are the undisputed facts. Please decide whether I should be on the Brady Index or not. And the Committee said, yes, you should. And now he's arguing to this court on a substantive due process claim that's been waived that I shouldn't be on the Committee because this is an old lie, and because this lie wasn't on the stand, it was to an employer. And so he certainly could submit that legal argument to the Committee for consideration. And are there explicit or express criteria for what constitutes a basis upon which you're placed on the Brady list? I know that there's a group of prosecutors that sit down and they decide it, and it's basically their discretion as to what constitutes Brady, Giglio, and which would be impeachment under the federal rules of civil procedure. Is that the way it is? It's essentially the obligation is to comply with Brady in a situation, so at least you're advising the deputy district attorneys. And, of course, in San Diego County, it's a large county, there are lots of them, so they don't all know this. So you put them on the index and the situation is on the index so that if they have this individual. Yeah, I understand why they're on the index, but how do they get there? The process of getting there is based upon, at bottom, constitutional requirements, correct? Correct, Your Honor. And that process, they're placed on the index after there is a composite decision made by various prosecutors, am I right? That's correct. There's a committee, and in this case there were undisputed facts, and so the only thing to look at is whether under the law that could be information that was material in a case. And in any case, whether or not a prosecutor would be required to turn that over because it relates to credibility of the officer. Correct, and that's really the secondary determination that's made on the spot when the prosecutor is faced with an actual case. These are advising them in advance. We don't know what the case is going to be in which Mr. Tillotson might offer testimony and whether he'd be a material witness. Perhaps he's one of a hundred witnesses in a case, and under those circumstances his information or his testimony might not be material, and therefore his prior lie might not have to be disclosed. There might be a situation in which he's the only witness in a particular case. He is the only witness who has identified the defendant in that case, in the criminal case, as the person who committed the crime. And under those circumstances. Can I just ask you a question? Yes, Your Honor. I've been waiting to ask you this question. Did it take ten years to put him on the Brady List after this event happened? Because that's what my notes show, that this happened in 2002, and it wasn't until ten years later. And I'm sorry. Yeah, I'm wrong on that. It happened in 1998, and then ten years later he was placed on the index. It took, Your Honor, a considerable amount of time. Ten years. For this simple reason. Tell me, how do you explain that? The DA didn't know about it. The DA can only put people on an index based upon conduct that they know about. And between 1998 and 2008 they didn't know about the conduct. Why is that? The San Diego County with three million people. Don't give me that talk, you know. Three million people. We've got eight million in L.A., you know. The information, for whatever reason, did not reach the district attorney's office, Your Honor. And there are procedural protections available to police officers and their personal records. Why didn't it reach it? The police didn't send it to the DA's office? They did not. And there may be restrictions under California law and the pitches process that may actually prevent them from providing that information to the district attorney's office on just a voluntary basis. So, no, it was not just sent in by the Sheriff's Department. So the police officials, his superiors, they violated the law by not sending it to the DA's office? No, I think they may have actually complied with California law by not sending it to the district attorney's office. Because there was concern about disclosing information that related to employment and there's laws and regulations that preclude that. There are just general laws and then there are specific laws that protect police officer, above and beyond that, personnel records for police officers. And so for the district attorney, I'm sorry, for the Sheriff's Department to just unilaterally provide information to the district attorney's office that was never requested might put them in hot water under the circumstances. But it's not an issue on appeal, right? It is not an issue on appeal in this particular case. It is an issue on appeal, but I want to know why that happened. And your answer is they didn't know about it? They did not know about it, Your Honor. That is the answer. And so whose fault is that? I'm not sure it's anyone's fault. Anyone's fault? No, I think that the Sheriff, under these circumstances, couldn't provide it. And obviously... Well, tell me why he couldn't provide it. Again, because... Be specific. Because of the Pitchess process. How did the Pitchess process preclude him from providing it? Well, there has to be court orders with respect to providing access to personnel records under California law. So the Sheriff isn't. And again, we haven't briefed this because it's really not before the court. Well, I know that, but you're the expert on this, and I'd never heard of the Brady Rule before I got on this case. I've been around quite a while, it's sad to say. But under these circumstances, again, I don't think they were able to provide it to the District Attorney's Office absent court order. And certainly the bottom line is they didn't provide it to the District Attorney's Office. They actually violated the Brady Rule then. What is the Brady Rule good for if it doesn't go to the prosecutor? Well, it does go to the prosecutor, but only if the prosecutor knows about the particular misconduct. The prosecutors aren't held to a standard where they need to be aware of things that they don't know about. So, in other words, his employer, the people who ran the office, didn't put this information into the Brady Pipeline, and so thereby they didn't make accessible to the prosecutors what they would need to know when they're bringing a case and whether this police officer or that police officer lied. The Sheriff's Department did not bring it to the attention of the District Attorney's Office. They're derelict, right? I wouldn't go that far. Why would you call it? There are California laws that protect personnel records, and so I think that the Sheriff's Department was likely complying with the law, but I'm not here to represent them in that particular case. No, but I like to find out what's going on in this world. All I can say— I like to know what's going on. You know, why something like this happens to someone. He goes around. Wherever he went to get a job, he told them. He told them why he was fired. Huh? And then somebody called from Coronado, and right away they got the Brady Index information. Well, I think first it was our call now. They called, and they were told that he was not in the Brady Index. And then everybody scurried around, and then they decided, well, we better put him in the Brady Index. Well, the city of Coronado and Mr. Tillotson made a joint request to the district attorney to determine whether his conduct would place him on the Brady Index. So they jointly did it because the city of Coronado was saying, unless you get essentially a clean bill of health on this, we're not going to hire you. And so that's when they jointly requested. Most places wouldn't hire you if you came in and said, well, I want to be a police officer, but I got fired from the sheriff's office in San Diego because I told them a lie. I think that's exactly right, Your Honor, and that's the point we make, and Judge Silver, I think, may be making with respect to causation. The test is a complete prohibition on his ability to engage in his profession. Actually, that isn't the test, right? The law doesn't say that. You're not really arguing that if you were suspended as a county attorney for five years that you wouldn't be entitled to due process, are you? Well, the issue is whether there's a liberty interest at stake, and certainly the courts have said that temporary effects on your ability to engage in your profession aren't enough. Temporary. But the case laws, those are two- and three-month intervals. Are you really saying that it should be complete, as in lifelong, before there's any due process is afforded? I think when I'm using the term complete, I'm not talking about a time frame here. I'm talking about whether or not there's evidence in the record to show that he cannot serve as a police officer today anywhere. When you say complete, what does that mean? To me, complete, it means forevermore. Now you're telling me there's a time frame. Well, the Supreme Court and this Court both have used the terms complete prohibition in describing what's necessary to establish the liberty interest that's required here. There are cases where we have said that what has been shown wasn't complete, and they're much more modest infringements. We don't really need to answer that issue, do we, that it's a lifelong ban? Again, I don't think I'm talking about a time frame here. What I'm saying is he's applied to a grand total of four police departments for positions. Only one of them outside the county of San Diego. He was not told, with respect to Riverside County, why he didn't get the position. With respect to the city of... But he did tell them that he had this problem. He testified, yes. He was an honest man. He said, I have sinned, I want you to know about it. And then he didn't get the job. So it doesn't take too much thinking to figure out there's got to be a connection. Well, but the key is, is it the Brady Index, or is it the underlying lie that prevented him from getting the employment? And we produced evidence that he applied 20 different times to police departments before being placed on the Brady Index and was denied employment under those circumstances. So, again, it goes to the issue of, is it the Brady Index that's causing his inability to get a job, or is it the underlying lie? They end up saying, well, if the choice is between somebody who's on the Brady Index and somebody who's not, the police departments are naturally going to hire somebody that's not. But it's also true with respect to somebody who's been fired from a prior employer for telling a lie. If you've got somebody, two candidates, one of them who's never been fired for telling a lie to their employer, and one who has, it's likely that the person who's going to get the job has never lied and been fired from a prior employer. And we believe under these circumstances that complete prohibition, which is at least the term that the Supreme Court uses under these circumstances, has not been established here. Because, really, there's no reason why another jurisdiction would care whether the DA's office in San Diego County has placed him on the Brady Index. They're not bound by it. And the four police departments, only two of which have said the Brady Index was the reason why, isn't a sufficient sample size to show a complete prohibition when, in fact, he was denied employment 20 different times prior to being placed on the Brady Index. Also, let me ask you this. Is it in any way unclear what the Brady Index is? I mean, we've talked about it and counsel for the petitioner has said that the problem is and what he believes should go to the jury is whether or not the Brady Index itself precluded him from being hired. Is it unclear anywhere in the record or is the record clear as to what constitutes the Brady Index? For example, the basis upon which it was created and what its intended purpose is, which is to give a list of people or law enforcement officers who have committed acts of misfeasance, malfeasance, or have been fired for reasons that would constitute a basis upon which that information should be turned over to defense counsel for the purposes of cross-examination. There's no dispute, I think, or no unclarity as to what the purpose of the Brady Index is. What it is, right? Is that it? I believe there's no dispute as to that. In this record? In this record. It's just not, this is a Brady Index, this is explained what it is, so that a prospective employer, law enforcement employer, would learn that the individuals on the Brady Index, they would know what it is. They would know what it is and understand what the purpose is. It establishes that? Yes. Okay. There is no dispute as to what it is. And the only slight difference I might draw, and I think I made this point before, is at this point it puts the district attorneys, the individual ones who try these cases, on notice that there may be evidence that has to be disclosed under Brady. So they will know about the prior lie. If Mr. Tillotson would happen to be a witness, then they can make the determination at that particular point in time whether to actually disclose the information. And they will at least have a better position to judge materiality of his testimony at that particular point in time. So that Mr. Tillotson, if the record establishes what it is, and he's applying for a job, and the only thing he's told is that you're on the Brady Index. We don't know why, but you're on the Brady Index. He could then come in to either those that place him on the index or also to the prospective employer and say, this is why the information is not material or not reliable as to why I should get the job. And that information is out there. In other words, he could say, not only this is what I did, but this is why it's not relevant to the job. When he goes to the prospective employer or when he goes to the district attorney, he can say, I shouldn't be on the list for these reasons. Right? He absolutely knows why he's on the list. He's on the list because of the lie to the Sheriff's Department. And he can say, this is the problem with the list. He can come in. This list is too broad, and it's causing me all these problems. And, in fact, it's larger than it should be. That type of thing he could have done. Well, I don't know that he can make arguments on behalf of others who may or may not be. For himself. For himself. And just say he can criticize the index. He can criticize his placement on it and argue what he's argued to this court, which is that there's some sort of time limit on these lies for impeachment testimony under Brady and or his argument that the lie has to be a lie on the stand and it's not enough that you lie with respect to an employer. Now, we have said in arguing that we believe there's no basis for those arguments. But, again, that's not before the court here because it's just a procedural due process question. But the Brady index doesn't preclude him from challenging the index either. You can say, look, I shouldn't be on this index because you know that there are frailties concerning this index and placing people on it. And then whoever is making the decision as to whether or not he should be on that index can say, yes, we understand the problems. We're going to take you off. Well, he can certainly raise those arguments. But, again, he won't be raising factual issues because he's admitted to the lie. So the only arguments he's been. . . I understand your point. But it's not just why I'm on the index. He can also challenge the index. He can say I should be taken off it. Counsel, I'm looking at your brief and you have this statement here on page 16 that you've alluded to an oral argument a couple of times. And that is that this is along the lines of your complete prohibition argument. You say this is particularly true in light of the fact that plaintiff was denied employment as a police officer approximately 20 times before being placed on the Brady Index. And then you have a citation here to the record. I just want to make sure that fact was in front of the district court. It was absolutely in front of the district court 20 times. And, again, they don't give reasons as to why he was denied employment. I understand. But the argument being that the underlying lie is something certainly that may be preventing him from getting employment under these circumstances, even if he wasn't on the Brady Index. I'm well over my time. Unless there's any questions, I'll sit down. Thank you. You know, he tells the truth. He tells the truth 20 times. And he still carries the marker cane.  Could you send us a note how the Pitchess Law prevented the Sheriff's Department in San Diego from putting him in the Brady List, whereby then the prosecutors would learn about his misdeed? If the court would like me to address that, I'm sure I will. I mean, you know, I knew Pete Pitchess well. He was a good guy. And on his behalf, I'll ask for that as well. You show me. Give me a memo. Give me the citation, whatever I need, that would excuse the San Diego Sheriff's Department from not making this material available to the prosecutors. And whether that process still goes on. I will address the argument in a supplemental brief, Your Honor. Because when there's a Brady violation, more often than not, it involves some police officer or detective. They look at something. Oh, well, you know, I don't think this is important. It ends up in somebody's desk and nobody knows about it. You know that goes on, don't you? I'm a civil lawyer. I don't deal with these issues very often, so I can't say that I do. Yeah, well, all you've got to do is read the papers once in a while. And read some of the reports that the courts publish. If you could do that for me, I'd appreciate it. Absolutely, Your Honor. And I'd be interested in that, too. I find it interesting, too, but adjunctive to that, prosecutors do have an obligation to turn over anything that may constitute Brady material within their possession, custody, and control. So they have to reach out for this information. But I think what you're talking about has something to do with providing the information relating to employment? Is that what you mean by this law? Here's what the circumstances were. He was fired from his employer in 1998. The DA had no case involving him in 1998. How was the DA to learn this information? I mean, there are thousands of deputy sheriffs in San Diego County. Whenever one is fired for an act of dishonesty or for whatever reason, the sheriff doesn't call up the DA and say, guess what, we fired Mr. Tillotson yesterday because he lied. Here you go. The Tillotson may have been on an investigation. He may have been, you know, they just don't sit around all day and do nothing. He may have been a potential witness in the case. But I'm not aware of him. It's a case that might not come up for five years. I'm not aware in 1998, at least, that the district attorney's office was dealing with any particular prosecution where Mr. Tillotson was a witness. You're not aware of it? So what does that mean? Because you don't know anything about it? All I can go is – You don't need to be aware of a lot of things. The only thing I can go by is what the record before me in the case I'm litigating is. You've got to broaden your focus sometimes. There's a bigger world out there. Thank you, Your Honor. If you get that file. Absolutely, Your Honor. Can you get it within 10 days? Yes, I can. May I take one minute? Send a copy to your learned opponent. Of course, Your Honor. May I take one minute, Your Honor? Yeah, go ahead. Hold me to that. I just want to focus on something that Judge Silver asked. Your Honor, you asked my colleague whether he could present evidence or arguments for why he shouldn't be on the Brady list. And yes, he probably can, and he could do that until he's blue in the face because even if he's correct, they don't have to – their position is we still don't have to take him off the list. So he gets nothing. But that assumes that that begs the question, even if he's correct. So that assumes that there are no criteria or there are criteria out there and that they're going to make a mistake. And, in fact, if that was the case, that it was incorrect, that's what I was asking about how they got onto this list. And I understand Brady is – the depth and breadth of Brady is all over, particularly for a prosecutor. But he still knows what he did. He still knows what he did, and he can say, I shouldn't be on the list, this is not what the list is designed for, and then go to the employer and he can say the same thing. And whether the employer agrees with it or not, I suppose, is dependent upon the personal predilection of the potential employer. Correct. But this gets back to the heart of this lawsuit. There are no standards that he could present all the evidence he wants. There's nothing in their policy, which seems to be somewhat non-existent, that even if he presented the best facts in law, that would compel them to take him off the list. When you asked my colleague whether he could present evidence and dispute his placement in the list, you'll notice that he did not say, yes, he could dispute it, and if he's correct, he comes out. There's just no provision for that. And that's why he's at the mercy of this committee and whether they want to take him off the list, whether the decision to place him in there is correct or not. That is the ultimate problem here. There's nothing he can do about it. Los Angeles has a completely different system. They have a hearing before a neutral hearing officer. Counsel, that really begs the question of why he's only applied four places and hasn't gone to Los Angeles. So I'm not sure this is going to help your argument. I didn't know Los Angeles had that system. They do. Are you talking about the police department? No, I'm talking about the district attorney. They're Brady Index. They have a more comprehensive system. Los Angeles calls it the Brady Alert System. And really, I question whether it's Brady material at all because as counsel has pointed out, they really don't know if it's Brady material until there's a trial that they can connect the witness officer with. So it may or may not be Brady material, but still it's called the Brady Index, and it's just the death note of someone's career. Penal Code Section 832.7a is one of the confidentiality statutes for peace officer personnel records. And although I haven't thoroughly analyzed that there's a clause in subsection a that allows the district attorney to have access to personnel files if they're doing some type of investigation, but I was just looking at a book I had. I haven't really looked through it thoroughly. Other than that, I have nothing else unless there are any questions. Thank you. All right. Okay, we'll go to the last matter. And Lee v. Electronic Game Card, Inc.
judges: Silver, Pregerson, Christen